UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BURTON J. WALTMAN<br>Commander, JAG Corps, U.S. Navy (Ret.)<br>19 Airy Hall<br>Kiawah Island, SC  29455<br><br>        Plaintiff<br><br>    v.<br><br>DONALD C. WINTER<br>Secretary of the Navy<br>1200 Navy Pentagon<br>Washington, D.C.  20350-1200<br><br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I.  COMPLAINT

Review of Final Agency Action; Violation of Naval Regulations;
Violation of Federal Statute; Violation of Constitution

1. This action seeks judicial review of a decision by the Secretary of the Navy to deny Commander ("CDR") Waltman's request for a Special Selection Board ("SSB") pursuant to 10 U.S.C. § 628(g), the Navy's violations of Navy and Department of Defense Regulations, and the Navy's violations of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

## II.  JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 701 *et seq.*, the Administrative Procedure Act, which permits a federal court to review final agency decisions of the Department of the Navy. This case presents federal questions pursuant to 10 U.S.C. § 628 and the Fifth Amendment to the U.S. Constitution.

3. Venue is proper because Defendant is a resident of the District of Columbia.

1

### III. PARTIES

4. CDR Waltman, Plaintiff, is a retired commissioned officer serving in the rank of Commander, 0-5, on the retired list of the United States Navy. He was a member of the Judge Advocate General ("JAG") Corps and is an attorney. He resides at the address provided in the caption above.

5. Defendant is the Secretary of the Navy and is named in his official capacity only. Under 10 U.S.C. § 628, Defendant is the official with final authority for granting or denying SSB requests.

### IV. STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On 18 January 2000, CDR Waltman was considered for promotion (in the promotion zone) to the rank of Captain (0-6) by the Fiscal Year-2001 ("FY-01") promotion selection board. The board did not select him for promotion.

7. CDR Waltman subsequently was considered for promotion (above the promotion zone) by the FY-02 and FY-03 promotion boards. On both occasions he was not selected for promotion.

8. On 12 December 2002, CDR Waltman requested a SSB for the Fiscal Year FY-01 board.

9. On 24 February 2004, CDR Waltman inquired about the status of his request.

10. By electronic mail dated 1 April 2004, a Navy attorney, Mr. Jim Morgan, informed CDR Waltman his SSB request had been "lost" for about a year, but as a result of his inquiry had been located and would be processed.

11. On 8 July 2004, CDR Waltman again inquired about the status of his SSB request. On 12 July 2004, Mr. Morgan informed him his request was forwarded from the Navy Personnel

Command (presumably to the Secretary of the Navy), but had been returned for further review and investigation.

12. On 15 September 2004, CDR Waltman received an electronic mail from Mr. Morgan indicating that the lawyer had recommended an Inspector General ("IG") investigation be conducted into the FY-01 promotion board's proceedings.

13. On 1 November 2004, CDR Waltman retired from the U.S. Navy.

14. On 7 April 2005, in response to an inquiry by CDR Waltman's counsel to determine the status of CDR Waltman's SSB request, Mr. Morgan informed CDR Waltman, by electronic mail, that the IG was still investigating the case.

15. On 14 February 2006, in response to CDR Waltman's counsel's inquiry to determine the status of his SSB request, Mr. Morgan informed CDR Waltman, by return electronic mail, that the Navy had failed to initiate processing of his SSB request.

16. In the same communication, Mr. Morgan informed CDR Waltman that he previously had recommended that the Secretary of the Navy grant his request for an SSB.

17. 10 U.S.C. § 628(g)(3)(A) provides as follows:

> If, six months after receiving a complete application for consideration by a special selection board under this section in any case, the Secretary concerned has not convened such a board and has not denied consideration by such a board in that case, the Secretary shall be deemed for the purposes of this subsection to have denied relief in such case.

18. More than six months have passed since CDR Waltman submitted his SSB request to the Secretary of the Navy.

19. CDR Waltman's request for a SSB therefore is deemed denied under 10 U.S.C. § 628(g)(3)(A).

20. 50 U.S.C. Appx. § 501 *et. seq*, "The Servicemembers' Civil Relief Act," tolls the applicable limitation period while servicemembers are performing active duty service.

21. Application to the Board for the Correction of Naval Records is elective. CDR Waltman is not required to pursue relief with the BCNR or any other administrative body before filing suit in this Court. *Wilhelm v. Caldera*, 90 F. Supp. 2d 3 (D.D.C. 2000).

22. This complaint is timely filed.

## V.  STATUTORY AND REGULATORY FRAMEWORK

23. 10 U.S.C. § 611 *et seq.* governs the promotion of active duty military officers. Department of Defense Instruction ("DODI") 1320.14 purports to implement the statutory provisions governing officer promotions. Secretary of the Navy Instruction ("SECNAVINST") 1420.1B is responsive to the statutory provisions and DODI 1320.14.

24. 10 U.S.C. § 628 governs Special Selection Boards ("SSB"). DODI 1320.11 purports to implement the statutory provisions governing SSBs. SECNAVINST 1401.1B is responsive to the statutory provisions and DODI 1320.11.

## VI.  STATEMENT OF FACTS

25. CDR Waltman enjoyed an outstanding career as a Naval judge advocate. He consistently received high accolades for his initiative, competence, performance, and integrity.

26. CDR Waltman's personal awards include the Defense Meritorious Service Medal; the Meritorious Service Medal (three awards); and, among others, the Navy Commendation Medal (three awards). CDR Waltman also is entitled to wear the Sea Service Deployment Ribbon and the Joint Meritorious Unit Award (two awards).

27. From August, 1996 to August, 1998, CDR Waltman served as the Fleet Judge Advocate for the United States Second Fleet and the NATO Striking Fleet Atlantic.

28. From August, 1998 to June, 1999, he served as the Executive Officer, Naval Legal Service Office Mid-Atlantic.

29. From June, 1999 to August, 2001, CDR Waltman served as the Director, Defense Institute of International Legal Studies, Newport, Rhode Island. This was a captain's billet, in which CDR Waltman excelled.  The Secretary of Defense awarded his command the Joint Meritorious Unit Award for the period under his direct command and a second Joint Meritorious Unit Award for the period afterwards.

30. In August 2001, CDR Waltman served as Division Head, International Law Division, and Professor of Operations, Joint Military Operations Department, Naval War College, Newport, Rhode Island. This, too, was a captain's billet in which CDR Waltman excelled.

31. On 4 February 1999, the USS ARTHUR W. RADFORD ( DD 968) ("USS RADFORD"), a U.S. Navy warship, collided with a merchant ship.  CDR Waltman, an experienced defense attorney, was assigned to defend the commanding officer ("CO") of the USS RADFORD during the investigation of this collision and any subsequent disciplinary action.

32. During the investigation and disciplinary action, all occurring throughout calendar year 1999, in the faithful and diligent discharge of his duties as a defense attorney, CDR Waltman found it necessary to allege that the Commander, Naval Surface Atlantic (a Vice Admiral), and that officer's Staff Judge Advocate, the senior lawyer on the Vice Admiral's staff, who was a respected senior JAG Corps captain, had engaged in serious misconduct.

33. The Radford case, naturally, rose to a very high profile within the Department of the Navy and Department of Defense, and generated very considerable press attention. The CO of the RADFORD also was the son of a retired Navy Admiral.

34. CDR Waltman was considered for promotion to captain by the FY-01 promotion board. The board considered for promotion those eligible officers holding the rank of commander in the U.S. Navy's JAG Corps.

35. The FY-01 promotion board convened on 18 January 2000 and did not select CDR Waltman for promotion to captain.

36. Five of the seven members of the FY-01 promotion board were senior officers in the Navy's JAG Corps.

37. All board members are required to take an oath of secrecy not to disclose the deliberations and proceedings of the board.

38. After CDR Waltman's failure of selection by the promotion board, he was informed by senior JAG Corps officers that his nonselection for promotion to captain was caused by his zealous representation of the CO of the USS RADFORD.

39. He was informed by one senior JAG Corps officer, while the FY-01 promotion board was still in session, that if the board members voted his official record, he would be promoted, but if the members voted the RADFORD case, he was in trouble. This officer also admitted to discussing the RADFORD case with a promotion board member prior to the convening of the board.

40. CDR Waltman obtained declarations from two senior JAG Corps officers, both of whom had experience as senior personnel officers within the JAG Corps, including duties of reviewing personnel records and providing records reviews for officers being considered for promotion. One of those officers indicated that CDR Waltman's record <u>did not contain any factor that would explain his failure to be selected to captain by the FY-01 board. This officer opined that CDR Waltman's record was among the top records considered by the FY-01 board</u>.

6

41. <u>This officer was also the Recorder for the FY-01 Board and as such was present during its deliberations</u>, but he would not disclose any of the deliberations of that board <u>due to the oath of secrecy required of all personnel involved in the promotion board proceedings</u>.

42. The second officer was personally familiar with CDR Waltman's record and performance and expressed the opinion that CDR Waltman's record <u>was highly competitive for promotion to captain and among the top records considered by the FY-01 board. He also could not provide any justification for CDR Waltman's failure to be selected for promotion other than the RADFORD case</u>.

43. Subsequent to CDR Waltman's failure to be selected, as noted above, he was assigned to duty in a <u>captain's billet (his second assignment to a captain's billet) at the Naval War College</u>, <u>even though he was only a commander</u>.

44. When CDR Waltman's department head at the Naval War College inquired about why CDR Waltman was being assigned to a captain's billet, the supervisor was told that CDR Waltman was too zealous in his representation of the RADFORD case and that he would never be selected to captain because of his aggressive advocacy in that case.

45. Admiral Vernon E. Clark, the former Chief of Naval Operations and the senior uniformed officer in the U.S. Navy, personally vouched for CDR Waltman's qualifications and strongly recommended his promotion to captain.

46. William J. Fallon, then Vice Admiral U.S. Navy, also recommended CDR Waltman for promotion to captain. Admiral Fallon later earned his 4th star and became the Vice Chief of Naval Operations.

47. A Department of Defense investigation confirmed that, in unrelated cases, senior members of the JAG Corps had violated promotion board regulations and federal law pertaining to the confidentiality of promotion boards.

48. One of the officers named in the investigation was a member of the FY-01 promotion board that failed to select CDR Waltman.

49. In another case, the Judge Advocate General of the Navy at the time of the FY-01 promotion board was accused of improprieties regarding the convening of a promotion selection board to choose the next Assistant Judge Advocate General of the Navy.

50. Based upon these alleged improprieties, the Judge Advocate General was removed by the Secretary of the Navy as President of that board shortly before it convened and another Rear Admiral was assigned in his place.

51. On 12 December 2002, CDR Waltman's SSB request was delivered to the Navy Personnel Command (PERS-80), as required by Naval regulation.

52. On 24 February 2004, after receiving no response to his SSB request for over 14 months, CDR Waltman inquired by electronic mail about the status of his request.

53. On 1 April 2004, a Navy lawyer, Mr. Jim Morgan, informed CDR Waltman that his request had been "lost" for about a year.  Mr. Morgan also informed CDR Waltman that his SSB request had been "found" as a result of the status inquiry and would be reviewed and processed.

54. On 8 July 2004, CDR Waltman again inquired about the status of his SSB request. On 12 July 2004, Mr. Morgan informed CDR Waltman that his request had been forwarded from the Navy Personnel Command (presumably to the Secretary of the Navy), but had been returned for further review and investigation.

55. On 15 September 2004, CDR Waltman received an electronic mail from a Navy lawyer indicating that Mr. Morgan had recommended an Inspector General ("IG") investigation be conducted into the FY-01 promotion board's proceedings.

56. On 1 November 2004, CDR Waltman retired from the U.S. Navy.

57. On 22 November 2005, Mr. Morgan informed CDR Waltman that an Inspector General investigation "has been assigned to the case. The IG realizes that [the Secretary of the Navy] will have to release members from their oath."

58. On 7 April 2005, in response to CDR Waltman's inquiry to determine the status of his SSB request, the Navy informed CDR Waltman that the IG was still investigating the case.

59. On 14 February 2006, in response to CDR Waltman's inquiry to determine the status of his SSB request, a Navy lawyer responded as follows:

> "In checking the status of the IG inquiry into CDR Waltman's board, I have found that it was never started. Contrary to what I thought had happened, the IG never received Secretarial authority to release board members from their oaths. An assistant in the IG's office told me to forward the authorization and they would start the investigation.
> "[The Secretary of the Navy]'s office does not have a record of the recommendation from [the Chief of Naval Personnel].
>
> "In view of this, I have asked our secretariat to look for my memo of 10 June 2004, recommending a special board. I need to get the copy with the approval initials to start the process with the Secretary.
>
> "I regret the additional delay and will keep you informed."

60. 10 U.S.C. § 628(g)(3)(A) states:

> If, six months after receiving a complete application for consideration by a special selection board under this section in any case, the Secretary concerned has not convened such a board and has not denied consideration by such a board in that case, the Secretary shall be deemed for the purposes of this subsection to have denied relief in such case.

## VII.  LEGAL CLAIMS

### Count I

**(Violation of Naval Regulations; Federal Statute; and Due Process)**

61. The information contained in paragraphs 1 through 60 is incorporated herein by reference.

62. SECNAVINST 1420.1B governs promotion selection boards for commissioned officers of the Navy and Marine Corps.

63. Paragraph 13(f) provides that "[e]ach member of the promotion selection board shall swear or affirm that they will perform their duties as a member of the board without prejudice or partiality, having in view both the special fitness of officers and the efficiency of their service. …Each member, recorder, and administrative support personnel shall swear **or** affirm that that they will not divulge the proceedings of the board except as authorized or required by SEVNAV or higher authority."

64. Paragraph 13(c) requires the submission of precepts for each promotion selection board.

65. The promotion selection board precept for FY 01 ("FY 01 Precept"), Paragraph 2(a), provided as follows: "[e]ach of you, president, members, recorders, and administrative support personnel, is responsible to maintain the integrity and independence of this selection board, and to foster careful consideration, without prejudice or partiality, of all eligible officers."

66. FY 01 Precept, at Paragraph (b), instructs that board members "must pay particularly close attention to the rules governing communications with and among other board members, the information authorized to be furnished to you, and the procedures you should follow if you believe that the integrity of this selection board has been improperly affected."

10

67. FY 01 Precept, at Paragraph (c), in elaboration, provides, "[y]ou may not receive, initiate, or participate in communications or discussions involving information that DoD Instruction precludes from consideration by a selection board. You are to base your recommendations on the material in each officer's military record, any information I have provided to the board in accordance with DoD Instruction 1320.14, and any information I have communicated to you by individual eligible officers under regulations I have issued. …You may not discuss or disclose the opinion of any person not a member of the board concerning an officer being considered unless that opinion is contained in material provided to the board under the provisions of DoD Instruction 1320.14."

68. Department of Defense Instruction 1320.14, Paragraph 6.1.3.1, provides that "[a]ll communications with, other than those communications that are only administrative in nature, shall be in writing, furnished to all board members, and made part of the board's record."

69. Paragraph 6.2.1.2 further provides that "Board members may not discuss or disclose the opinion of any person not a member of the board concerning an officer being considered unless that opinion is contained in material provided to the board under this Instruction."

70. Where material or information outside an eligible officer's official record is introduced to and considered by the selection board, the officer has a right to receive such material or information in writing and to submit written comments. *See* SECNAVINST 1420.1B, Paragraph 13(d)(6); and DOD Instruction 1320.14, Paragraphs 6.1.3.2.3.2 and 6.1.3.2.3.3.

71. Military regulations carry the force of statute and must be adhered to. *Service v. Dulles* 354 U.S. 363, 388 (1957).

72. The military's violation of its own regulations constitutes a violation of the Fifth Amendment right to due process of law. *Antonuk v. United States*, 445 F.2d 592, 595 (6th Cir.

1971). "The due process clause here requires us not to measure the Army regulations against some constitutional standard, but instead to determine whether the regulations were followed." *Id. See also Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004).

73. By considering highly adverse and inaccurate information outside of CDR Waltman's official military record, and by failing to reduce that information to writing and provide it to CDR Waltman for response, the Navy violated DoD Instruction 1320.14; SECNAVINST 1420.1B; FY 01 Precept; and the Fifth Amendment to the U.S. Constitution.

74. CDR Waltman suffered severe prejudice as a result of the Navy's unlawful conduct.\

## Count II

### (Improper Denial of SSB Request)

75. The information contained in paragraphs 1 through 60 is incorporated herein by reference.

76. Department of Defense Directive 1320.11, Section 4, Paragraph 4.2, provides for the convening of a SSB where "the decision of the original board that considered the officer was contrary to law or involved factual or administrative error, or if the board lacked some material information for consideration."

77. SECNAVINS 1401.B purports to implement both 10 U.S.C. § 628 and Department of Defense Directive 1320.11.

78. To approve a request for a SSB, the Secretary of the Navy must be convinced that the action of the FY-01 promotion board was "contrary to law" or involved "material error of fact" or "material administrative error." 10 U.S.C. § 628(b)(1)(A).

79. Navy regulations implementing 10 U.S.C. § 628 state that any act of a promotion board that deprives the officer concerned of a constitutional or statutory right is contrary to law.

80. Further, any error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board is a material error. SECNAVINS 1401.1B, paragraph 8c (2)-(3).

81. The Secretary of the Navy is required to provide guidelines to promotion board members regarding the performance of their duties. 10 U.S.C. § 615(b)(6).

82. Actions taken in violation of those guidelines (in the Department of the Navy these secretarial guidelines are called a "precept") are "contrary to law."

83. DODI 1320.14 imposed a duty upon each board member to request relief from their board duties from the Secretary of the Navy if the board member could not in good conscience perform his or her duties without prejudice or partiality.

84. Those duties were explained to the FY-01 promotion board members in a precept signed by the Secretary of the Navy. This precept required each board member to only consider the information contained in CDR Waltman's official military personnel record to determine whether he should be promoted to captain.

85. Board members were specifically instructed not to consider information outside of the official record if that information could be considered adverse to CDR Waltman.

86. The reliance by board members on information from outside CDR Waltman's official military record, and not properly placed before board members, was both "contrary to law" and a "material administrative error."

87. The board members' failure to apprise CDR Waltman of that information in writing and afford him an opportunity to respond was both "contrary to law" and a "material administrative error."

88. Extreme prejudice resulted to CDR Waltman from the board's improper conduct.

89. The failure of an administrative agency to review and consider non-frivolous legal claims renders the agency's decision arbitrary. *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005).

90. A less deferential standard of review applies to administrative decisions where the agency fails to "sufficiently discuss its reasoning so as to allow a court to review its decisions." *Smith v. Dalton*, 927 F. Supp. 1, 10 (D.D.C. 1996).

91. The Secretary of the Navy's denial of CDR Waltman's SSB request was arbitrary and capricious; not based on substantial evidence; a result of material error of fact or material administrative error; and contrary to law.

## **PRAYER FOR RELIEF**

WHEREFORE, CDR Waltman prays that this Court:

A. Set aside the Secretary of the Navy's deemed denial of request for a SSB and remand the case back to the Secretary of the Navy, ordering the Secretary to convene a SSB to consider CDR Waltman for the FY-01 JAG Corps Captain promotion board;

B. Order other equitable and statutory relief that this Court deems appropriate; and

C. Award CDR Waltman, against defendants, payment of all costs and attorney fees incurred in this action.

Respectfully submitted,

/s/

Raymond J. Toney (Bar # NY0066)
*Attorney for Plaintiff*

The Law Office of Raymond J. Toney
34-16 30th Avenue, Third Floor
Astoria, NY 11103
Tel: 718-726-3565  Fax: 718-504-4735
E-mail: rjtoney@rjtlaw.net