# GRANT LATTIN
*Attorney at Law*

11970 Shorewood Court  
Woodbridge, VA 22192

(703) 490-0000  
Fax: (703) 497-7249

E-Mail: GrantLattin@aol.com  
ArmedForcesLaw.com

9 Dec 02

From: CDR Burton J. Waltman, JAGC, USN, 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/2500  
To: Secretary of the Navy  
Via: Chief of Naval Personnel (PERS-80)

Subj: REQUEST FOR SPECIAL SELECTION BOARD

Ref: (a) Title 10, United States Code  
    (b) DoD Directive 1320.11 of 6 May 96  
    (c) SECNAVINST 1401.1B  
    (d) DoD Instruction 1320.14 of 24 Sep 96  
    (e) SECNAVINST 1420.1A

Encl: (1) Official documents for FY-01 JAG Corps Captain promotion board  
    (2) Declaration of CDR Burton J. Waltman, JAGC, USN  
    (3) History of Assignments for CDR Waltman  
    (4) Declaration of CAPT Henry R. Molinengo II, JAGC, USN, of  
    (5) Declaration of CDR (CAPT select) Mark D. Lawton, JAGC, USN, of  
    (6) Declaration of CAPT Michael L. Felmly, USN  
    (7) COMDESRON 28 ltr 1611 00 of 13 Feb 99 w/ endorsements  
    (8) ADM Vernon E. Clark, USN, ltr of 15 Nov 01  
    (9) Joint Meritorious Unit Award w/ supporting documents  
    (10) Declaration of CAPT Weston D. Burnett, JAGC, USN (Ret.)  
    (11) Ltr of Recommendation from CAPT David P. Price, JAGC, USN  
    (12) DoD IG Report of Investigation of 22 Jul 02 (Redacted by DoD IG)

1. **Request.** Enclosure (1) establishes that CDR Burton J. Waltman, JAGC, USN, was considered by the FY-01 JAGC Captain USN promotion selection board, and he was not selected. It also confirms the members of that board. CDR Waltman respectfully requests a special selection board for the reasons stated below. This request is made pursuant to section 628 of reference (a), and references (b) and (c). Enclosures (2) - (12) are provided in support of this request.

2. **Summary and Background.** CDR Waltman alleges that he was not selected for promotion for captain because unknown members of that board considered evidence from outside his official record. The evidence will show that CDR Waltman was assigned as the defense counsel to defend the commanding officer involved in a high-profile ship collision. Due to CDR Waltman's actions as a defense counsel made in behalf of his client in that case, the senior leadership of the Navy JAG Corps was not pleased with CDR Waltman, and those senior members considered CDR Waltman's actions as a defense counsel when considering him for

promotion to captain. Based on his official record, there is no other logical explanation to explain his failures of selection to captain.

3. **The Law.** To approve a request for a special selection board, section 628(b)(1)(A) of reference (a) demands that the Secretary determine that the action of the original selection board be **contrary to law** or involve material error of fact or **material administrative error**. [Emphasis added.] Paragraph 8.c of reference (c) states:

   (1)   ....
   (2)   Any act of a promotion selection board that deprives the officer concerned of a constitutional or statutory right is **contrary to law**.[Emphasis added.]
   (3)   Any error of fact or **administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board is a material error**. [Emphasis added.]

Section 615(b)(6) of reference (a) permits the Secretary to furnish board members with guidelines that may be necessary to perform their duties. Violation of those guidelines (in the Department of the Navy these secretarial guidelines are called a precept) would therefore be **contrary to law**. Additionally, section 613 of reference (a) requires each board member to take an oath that the members will perform their duties "without prejudice or partiality" and a violation of that oath would likewise be **contrary to law.**

4. **Prejudiced or Partial Board Members**. Each board member was required by the board precept that was authorized by statute and regulation to consider only evidence contained in CDR Waltman's official record. They were permitted to consider other facts within their personal knowledge but only if that evidence would not be considered adverse to CDR Waltman. The evidence of this case will show that CDR Waltman's official record was among the best of those considered, and further, that the only facts that board members could have considered to not select CDR Waltman were facts the board members were prohibited by law from considering. The reliance upon such facts not contained in CDR Waltman's official record, and the reliance upon facts not properly before the board members was therefore **contrary to law** or was a **material administrative error**, or both.

5. **Detailed Facts in Support of this Request.**

   a.   **CDR Waltman's Statement**. [Note: It is absolutely essential that the reviewer read enclosure (2) which is incorporated by reference into this request. Pertinent sections are included in this request for emphasis.] CDR Waltman states that he was not selected for promotion to captain because of his zealous representation of a high-profile client, the CO of the USS ARTHUR W. RADFORD (DD 968), after a 4 February 1999 collision of that naval vessel with a merchant vessel. This collision occurred in the year immediately preceding the FY-01 board when CDR Waltman was in the primary zone. It was necessary in the defense of his client to allege improper conduct by a 3-star flag officer and that officer's Staff Judge Advocate pertaining to the detachment for cause of CDR Waltman's client. [The chain of command was upset that CDR Waltman had implied that his client's detachment for cause was improperly influenced by Commander, Naval Surface Atlantic, with the tacit approval of his Staff Judge

Subj: REQUEST FOR SPECIAL SELECTION BOARD ICO CDR BURTON J. WALTMAN

Advocate, a respected senior Navy JAG Corps Captain. See enclosure (7).] Other senior JAG Corps officers have attributed CDR Waltman's nonselection to the Radford case. See enclosure (2).

    b.    <u>A Board Member Discussed RADFORD Case Just Before Board Convened</u>. CDR Waltman's former commanding officer, who was the commanding officer of the Naval Legal Service Office Mid-Atlantic, Norfolk, at the time of the RADFORD collision, said as the FY-01 board met, that if the board members voted CDR Waltman's record, he would be promoted, but if they voted RADFORD, he was in trouble. This officer also admitted discussing the RADFORD case with a specific FY-01 board member. That board member refused to discuss her knowledge of CDR Waltman's board deliberations with counsel for CDR Waltman citing her oath of secrecy. Please remember that senior JAG Corps officers comprised five of the seven members of this board. See enclosures (2) and (11).

    c.    <u>CDR Waltman's Official Record was at the Top of Promotion Zone and RADFORD is the Only Explanation for Failure to Select</u>. Enclosure (3) is a history of CDR Waltman's assignments. Enclosures (4) and (5) are assessments of CDR Waltman's official record by officers who had a duty to evaluate official records and provide formal records reviews for JAG Corps officers. These officers have concluded that CDR Waltman had nothing in his record that explained his failure of selection and that his official record was one of the top records before the board. Seven officers were selected by that board. The declarant in enclosure (4) was the recorder for the FY-01 board. [Note: CAPT Molinengo, the recorder, has provided this information in support of CDR Waltman's request even though he sat in as the board deliberated. He is bound by his oath of secrecy not to discuss the board deliberations and he has honored that oath. An investigation by the Navy or DoD Inspector General could obtain a release of these board members and the recorder from their oath of secrecy to determine what actually happened in this board.] The declarant in enclosure (5) cannot think of any other explanation for CDR Waltman's failure to select other than the Radford case. This fact is further corroborated by the officer who recently supervised CDR Waltman in his duties at the Naval War College. This senior Navy line officer, not a JAG Corps officer, confirms that when he inquired about CDR Waltman's qualifications for this current O-6 assignment even though he was an O-5, he was told that CDR Waltman was not an O-6 because he was too zealous in his representation in the Radford case and that CDR Waltman would never be selected to O-6 because of it. See enclosure (6).

    d.    <u>CNO's Promotion Recommendation</u>. No less a Navy officer than Admiral Vernon E. Clark, the Chief of Naval Operations, has personally vouched for CDR Waltman's qualifications, and has strongly recommended his promotion to captain. See enclosure (8).

    e.    <u>Successful Tour as an O-6</u>. Enclosure (9) documents CDR Waltman's superb performance of duty while serving in a captain/O-6 billet. He has already proven his ability to perform as a captain. The unit that he led was the only legal office ever awarded a Joint Meritorious Unit Award by the Secretary of Defense. Enclosure (10) documents CDR Waltman's performance of duty both before and after Radford and the declarant, a retired Navy JAG Corps Captain, is puzzled by CDR Waltman's nonselection.

Subj: REQUEST FOR SPECIAL SELECTION BOARD ICO CDR BURTON J. WALTMAN

       f.      <u>DoD IG Investigation Documents Similar Problems with JAG Corps Promotion Boards</u>. Enclosure (12) is a redacted Department of Defense Inspector General's Report of Investigation. This investigation confirms that senior members of the JAG Corps have previously violated promotion board regulations and federal law pertaining to the confidentiality of selection boards. Enclosure (1) confirms that one of those officers was a board member in the FY-01 board that failed to select CDR Waltman. It is just this type of behavior by board members that is suggested by the evidence in CDR Waltman's case. RADM Guter was a President of the FY-02 board. RADM Lohr was President of the FY-03 board.

       g.      <u>Another Example of Alleged JAG Corps Leadership Improprieties in the Selection Board Process.</u> The other example surrounds the alleged statements and promises made by the former Judge Advocate General of the Navy, RADM Donald J. Guter, JAGC, USN (Ret.) before the convening of the Assistant Judge Advocate General (AJAG) selection board which allegedly necessitated his removal as President of the AJAG board on the Friday before the board convened. RADM Steven B. Kantrowitz, JAGC, USNR, was then assigned as President of the board.

6.    <u>**The Duty of Board Members.**</u> Reference (d) is the Department of Defense regulation that governs the conduct of promotion selection boards. Paragraph 6.2.1.3 states:

> Any board member who believes that he or she cannot, in good conscience, perform his or her duties as a member of the board <u>**without prejudice or partiality**</u> has a <u>**duty to request relief**</u> by the Secretary of the Military Department concerned from such duty. [Emphasis added].

This regulation was made applicable to the board members in CDR Waltman's selection board by paragraph 12 of reference (e) and the precept signed by the Secretary of the Navy, contained within enclosure (1), specifically directing the members to comply with reference (d), and to certify their compliance with reference (d) upon completion of the board's deliberations. See specifically paragraph 16.f of the enclosure to the precept. It uses the identical language cited above. In other words, if a board member knew information about CDR Waltman regarding the RADFORD case that would cause that member to be prejudicial or partial, that member had a duty to request relief.

7.    <u>**Board Members Failure to Comply with Duty was Contrary to Law.**</u>

       a.      <u>**The Law**</u>. A board member has a "duty" to request relief if he cannot perform the duties as a member without prejudice or partiality. This duty is virtually identical to the duty that a federal judge has when his impartiality may be questioned. "Any justice, judge, or magistrate of the United States shall disqualify himself <u>**in any proceeding in which his impartiality might reasonably be questioned.**</u>" See 28 U.S.C. § 455. Emphasis added. Please notice, that like a board member, a judge has a duty to disqualify himself (or in the case of a board member, to request relief) when his impartiality may be questioned (or in the case of a board member, when there may be prejudice or impartiality). In such cases, actual prejudice or impartiality does not need to be proven. The evil to be avoided is not actual prejudice, but rather the appearance of partiality.

4

    b.    **The Courts.** Though unable to find a court decision addressing this issue in a promotion board case, there are many cases discussing this issue in the analogous situation of a federal judge. The principle is the same since the rule is virtually identical. The Supreme Court of the United States has held that when determining whether a judge should disqualify himself, the judge's actual knowledge of facts creating an appearance of impartiality by the judge is not necessary, but rather, one need only show that the public might reasonably believe that the judge knew of facts creating an appearance of impropriety. It is an objective test, not a subjective test by the judge. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859-861, 108 S.Ct. 2194, 2202-2203, 100 L.Ed. 855, 872-873 (1988). In a more recent federal case interpreting the same language, the court held that **the goal is to exact the appearance of impartiality though no actual partiality exists.** The test is if a reasonable man, were he to know all the circumstances, harbor doubts about the judge's impartiality. If so, then disqualification is demanded. *United States v. Avilez-Reyes*, 160 F.3d 258, 259 (5th Cir. 1998). So the question we must ask is whether or not a reasonable man would harbor doubts about a board member's impartiality if he knew all the circumstances. Another federal court, specifically in a military promotion board case, stated "where the error is the violation of a provision designed to protect against a general form of prejudice, and there is no way of determining whether actual prejudice was involved in highly subjective and secret decision-making, we conclude that this right was not had." *Doyle v. United States*, 220 Ct. Cl. 285, 306, 599 F.2d 984, 997-998 (Ct. Cl. 1979). Like the Court of Claims, after consideration of the facts and the law in this case, one must conclude that prejudice occurred in CDR Waltman's case, and failure of the board members to request relief from their duties was **contrary to law** or was a **material administrative error**, or both. Therefore, the law requires that CDR Waltman receive a special selection board.

8.    **Request for Relief.** Based upon the above information and in accordance with reference (c), CDR Waltman respectfully requests that the Secretary of the Navy authorize a special selection board be convened for the FY-01 JAG Corps Captain USN promotion selection board, and that CDR Waltman's name be placed before that board for its consideration.

9.    **Conflict of Interest.** CDR Waltman is making serious allegations of impropriety against senior members of the JAG Corps, to include possible allegations against the current Judge Advocate General of the Navy, who was a member of the FY-01 promotion board and President of the FY-03 promotion board. Special selection board requests are routinely reviewed by members of the JAG Corps. We respectfully request that any legal review of these allegations and this request be conducted by civilian lawyers from the Navy General Counsel's office to avoid the conflict of interest that will inevitably occur when a JAG Corps lawyer is asked to review the actions of senior officers of the JAG Corps when those same senior officers will determine where that JAG Corps lawyer will be assigned, who will sit on that lawyer's future promotion boards, and who will determine what type of work that lawyer will be assigned.

10.    **Request for Investigation.** By copy of this letter and its enclosures, we respectfully request that if this request is not granted, the Inspector General of the Department of Defense investigate the allegations contained herein.

Subj: REQUEST FOR SPECIAL SELECTION BOARD ICO CDR BURTON J. WALTMAN

11. **Copy to Congressional Committees.** We are also submitting copies of this letter to the Chairmen of the Senate and House Armed Services Committees for consideration, as they or their staffs deem appropriate.

Very Respectfully,

Burton J. Waltman
CDR, JAGC, USN

Grant Lattin
Attorney at Law

Copy to:
Chairman, Senate Armed Services Committee
Chairman, House Armed Services Committee
Inspector General, Department of Defense